FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA

2011 MAR -7  PM 2: 12

BY DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FRANCIS A. COLLINS
    versus.
MICHAEL SEAGO
CAMILLE VILLAGE, LLC
NORTH STREET 1, LLC

CIVIL ACTION No. 11-

*    *    *    *    *    *

## COMPLAINT

1.    COMES NOW PLAINTIFF, Francis A. Collins (plaintiff) who shows that the defendants on numerous occasions did use United States mail and interstate wire and internet communications facilities to commit theft of services by fraud from plaintiff, and then by the same means by fraud did commit theft of services and RICO (18 USC § 1962 et seq.) damages compensation. The defendants' series of thefts by fraud against plaintiff constitute a RICO prohibited 'pattern of racketeering activity' which caused several discrete injuries to plaintiff. Plaintiff seeks RICO's mandatory threefold damages compensation for each of the injuries.

### STANDING, JURISDICTION AND VENUE

2.    Plaintiff's standing to bring this litigation and the Court's jurisdiction to decide it are found in 18 USC § 1964:

        (c) Any person injured in his business or property by reason of a violation of Section 1962 of this Chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

        (a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of Section 1962 by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in ....

3.      That the Middle District of Louisiana is the proper venue for this litigation is established by the fact that the defendants employed certified public accountants in Baton Rouge and a retired former certified accountant (plaintiff) in Port Vincent to perform professional services for the enterprise in Baton Rouge and in Port Vincent, both within the Middle District, thus the Middle District is a § 1965 "district in which such [defendant] ... transacts his affairs."

4.      The defendants are all associated with and together constitute an enterprise engaged in interstate commerce. The defendants develop and operate HUD Section 42 tax credit financed and other low income apartment rental operations in Mississippi and Louisiana. The defendants violated 18 USC § 1962 (b) and (c) by routine use of mail, wire and internet communications in the course of obtaining capital, revenue, goods and services by fraud for use in interstate commerce, thus they constitute a RICO prohibited racketeer influenced corrupt organization. North Street 1, LLC and Camille Village, LLC are 100% controlled by Michael Seago.

## PLAINTIFF'S INJURIES

5.      In a pattern of racketeering activity, the defendants regularly used mail, telephone and internet for almost two years to commit two different thefts of services by fraud against plaintiff, and in previous and concurrent instances did the same to other professional services providers. During the second year the defendants also repeatedly used mail, wire and internet facilities to commit theft by fraud the monetary damages that had been defacto made to accrue by their conduct while on notice and demand, and thus were payable to plaintiff. They wantonly continued to injure plaintiff by theft by fraud of professional fees and defacto accrued RICO damages even after being given notice that their conduct violates RICO and causes injury to treble. As a consequence, the defendants caused their damage liability to treble repeatedly. They continued to defraud plaintiff in defiance of the law's prohibitions and its threefold damages

2

mandate, and thus repeatedly incurred RICO's threefold damages plus attorneys fees and costs penalties. Their continuation of criminal conduct, after having been put on *notice*, changed their defiance from defiance of plaintiff's demands to defiance of law's commands.

6.     Defendant Seago's crimes were not of an inadvertent oversight or misstep nature nor of a misunderstanding or difference of opinion nature. Defendant Seago wantonly schemed and acted in violation of RICO for the purpose of personal enrichment. He wantonly schemed and acted illegally for the purpose of obtaining unjust enrichment at the expense of others. Plaintiff necessarily became the victim of Defendant Seago's scheme to create a fraudulent million dollar tax evasion and a multi-million dollar swindle of a partner in this enterprise. As part of that scheme, he committed theft of professional services by fraud against plaintiff on two occasions. The first theft by fraud occurred because defendant Seago's modus operandi is to frequently change accountants and to bar by limiting their charges his accountant's and auditor's inquiries into his business transactions. He purposefully limits the amount of knowledge they can acquire. The second theft occurred when it became crucial to discharge plaintiff as part of his larger scheme to defraud the United States and his Investment Partner. In this phase of the scheme, the defendant refused to pay plaintiff for services rendered in order to prevent completion of the ($3,734,359) loss analysis that was to become the basis of the larger frauds. Defendant Seago discharged plaintiff by means of the theft, then used mail and e-mail to create an absolutely false illusion that plaintiff was in possession of the defendant's records of the loss amount. The ruse was a planned artifice by which defendant Seago could subsequently explain or defend why he had no records to back up the fabricated 'loss', 'voluntary loan,' $3,734,359 figure he planned to claim and use. The two letters and the e-mail by which defendant Seago ostensibly attempted to

recover his records from plaintiff, who had possession of none of defendant Seago's records, are, as used against plaintiff, *prima facie* acts of attempted extortion, theft and fraud by mail and e-mail. Together with the two thefts of professional services by fraud, they constitute five separate and distinct RICO predicate acts by which defendant Seago inflicted economic injury on plaintiff. Defendant Seago's fraudulent schemes are very big in amount, very long range, very well planned and artfully executed, are committed against his victims without discrimination, and are known by Defendant Seago to be criminal conduct. He committed these frauds to enrich himself, without concern as to the injury inflicted on others, or that his acts were criminal.

7.      In a pattern of racketeering activity, the defendants repeatedly committed crimes to resist all of plaintiff's mail, e-mail and telephone solicitations to be paid, and to persuade them to cease their RICO violations and other criminal activity they were committing against plaintiff, the United States and others. They routinely resisted by stonewalling (the act of stalling, evading or filibustering, especially to avoid the revelation of incriminating evidence), and by threatening malicious prosecution, and by exerting fraudulent influence on others to prevent performance of duties they owed to plaintiff. The defendants' pattern of racketeering activity includes a year of overtly committing fraud by silence against plaintiff, and against the law. These were the conduct and acts by which the defendants injured plaintiff. These acts and conduct are the exclusive basis of plaintiff's petition for RICO threefold damages, attorney fees and other costs.

MONETARY INTERESTS OF THE UNITED STATES AND OTHERS

8.      The defendants knowingly defied the law and committed theft and other crimes against plaintiff, not because the initial amount owed to plaintiff was material to them, they acted against plaintiff and the law because they were committing or had already committed multi-million

4

dollar crimes against the United States and others that were infinitely more financially significant, and if exposed carried far more serious repercussions.

9.      The *nexus* of the United States's interest in this case is that defendant Seago is conducting or has already conducted thefts by frauds against the United States involving millions of dollars; is conducting or has conducted thefts by frauds in interstate commerce against the enterprise's Investment Partner, and is conducting or has conducted thefts by frauds and malicious civil prosecution against the enterprise's builder and its architect and the builder's and architect's insurers–all involving millions of dollars. The defendants routinely obtain professional services by theft by fraud, and routinely defraud those who they employ to cause the production of fraudulent reports, including reports to Federal agencies. Even though the endeavor to consummate these frauds is what caused the defendants to injure plaintiff as they did, these endeavors in and of themselves do not directly injure plaintiff and are not material to his case.  The defendants needed to  injure plaintiff in order to further the frauds they were committing against the United States and others.

10.     Specifically and crucially important to a fraud against the United States, defendant Seago fraudulently induced  plaintiff to produce an uncompleted accounting report that is crucial in its uncompleted state to the artifices by which defendant Seago is defrauding the United States of tax revenue due from him.  The report, in its uncompleted state, is also crucial to two other million-plus dollar thefts by fraud defendant Seago is presently conducting, or has conducted.

11.     Upon receiving the uncompleted report from plaintiff, defendant Seago  deliberately terminated his employment of plaintiff by steadfastly refusing to pay any of the accompanying invoice for the services plaintiff performed for him; and by so doing, defendant Seago committed

a contrived RICO predicate act of theft of services by mail fraud. Then for more than a year, defendant Seago committed innumerable predicate acts against plaintiff in order to preserve plaintiff's report in its uncompleted state while he used it to defraud The United States and others.

12.     Defendant Seago fraudulently contrived to obtain a false and excessive calculation of a Loss on Development report from plaintiff for the purpose of defrauding the United States and others. Plaintiff's report, showing a loss of $3,734,359, is or was a critical element of defendant Seago's other ongoing frauds. The defendants also, at the same time and for the same reason, discharged and alienated  the Baton Rouge CPA firm by committing theft of services by mail fraud against them, in order to further their frauds against the United States and others, and to conceal the frauds from the United States and other victims of their frauds.

13.     In a nutshell, the defendants defrauded and damaged plaintiff and other accountants because to do so was necessary to accomplish the three other much larger frauds which they are still attempting to accomplish, or have accomplished.

14.     The defendants are attempting to defraud the United States of income taxes properly owed by them. They are also attempting to extort monetary compensation from  their building contractor and architect and their insurers by means of fraudulent artifices, including the artifice committed against plaintiff, and by means of malicious  prosecution of a civil action and extortionate threats of malicious prosecution, by mail.

15.     Defendant Seago is engaged in defrauding the North Street 1, LLC partnership's Investment Member by an artifice related to a "voluntary loan" that establishes a valuable priority upon liquidation of the *res*, Camille Village Apartments.

## BACKGROUND, PLAINTIFF'S INJURIES

16.     Defendant Seago employed plaintiff, on the sixth occasion of employment, to assist him in the compilation of the amount of loss he claims to have incurred on his development of the Camille Village Apartments HUD project. Defendant Seago expected that the number produced by plaintiff's work would become the amount of a tax deduction and also become the amount of another asset, a 'voluntary loan' described in the agreement between Seago and the Investment Member. A benefit of several million dollars from his eventual collection of the loan and potentially a million dollar reduction of income taxes will accrue to defendant Seago if this fraudulent artifice is permitted by the United States to be completed.

17.     In addition to employing plaintiff to do research, analysis, calculation and a Report on the loss incurred in the development of Camille Village Apartments, contrary to the false pretext given for non payment of plaintiff's invoice for the services performed (that plaintiff was acting on his own and not for Seago's benefit), defendant Seago directed plaintiff to go to Summit Apartment Management Company in Hammond to straighten up accounting errors being shown on the Camille Village Apartments' financial statements, which plaintiff accomplished, for the purpose of enabling defendant Seago to get his final capital contributions from the Investor Member of the enterprise (Alliant) and to get the proceeds of the permanent financing from a mortgage on which closing was being delayed pending the correction of the financial statements. A cash flow benefit of more than a million dollars to defendant Seago was made to conclude immediate as a result of this part of plaintiff's work. Then, about a month after asserting that plaintiff was acting on his own, defendant Seago still instructed an Alliant asset manager to "get with" plaintiff by telephone in regard to the accounting for the 'voluntary loan'. The manager

7

discussed the matter with plaintiff for thirty minutes to an hour, and plaintiff sent defendant Seago a written report of the conversation's outcome.

18.    Plaintiff never did anything on defendant Seago's behalf that he was not specifically directed by the defendant to do, and never billed defendant for any work not performed in accord with defendant Seago's immediate, direct instructions.

19.    Defendant Seago's mailed false contention that plaintiff was acting on his own and not at defendant Seago's direction (Complaint Exhibit D)  was only a fraudulent pretext to withhold payment for services rendered. Defendant Seago's refusal to pay was actually only a fraudulent artifice by which defendant Seago terminated plaintiff's analysis of defendant Seago's loss on development of Camille Village Apartments at a point where the loss was grossly overstated. Defendant Seago's mailed, written contention otherwise is patently a fraudulent and untrue fabrication, concocted only to ostensibly justify his termination of plaintiff's employment by theft by fraud against plaintiff, when the defendant's concoction was actually part of an artifice by which to conceal the evidence of, and to complete, three much larger frauds he is attempting–concealed by creating "justification" for his severance of the enterprise's communications with plaintiff. This artifice, termination of their employment and alienation of a series of accountants by theft of their services by fraud, is so frequently used by defendant Seago that it is clearly a *modus operandi*[1] of the enterprise, and the frequency and fraudulence of it is

---

[1]         Defendant Seago learned from oft-repeated experience that accountants who've been defrauded of payment for their services do not cooperate, beyond ethical and professional minimums, with their successors. To deliberately alienate accountants to discourage communication with their successors and then to engage different accountants frequently is essential to the secrecy which enables the defendant to constantly engage in thefts by fraud and other illegal conduct.

one of many things that establish a clear pattern of racketeering activity, and that the enterprise is a racketeer influenced corrupt organization.

20.      Thus the defendant Seago deliberately alienated plaintiff by theft of services by fraud (Complaint Exhibits A, B, C) at a point where analysis was incomplete and the defendant's loss was grossly overstated.  Defendant Seago broke his relationship with plaintiff for no other reason than to illicitly enhance the value of three other multi-million dollar artifices. He contrived this particular artifice in order to make the three larger frauds much easier to accomplish and much harder for his victims to detect or to prove. Plaintiff's investigation and analysis of the loss was incomplete, and was so noted, at the point at which defendant Seago conducted the theft by fraud artifice against plaintiff.

<em>PRIMA FACIE</em> FACTS MANDATE GOVERNMENT'S ATTENTION

21.      Plaintiff's *uncompleted* interim report of a $3,734,359 loss is crucial to the three multimillion dollar frauds, including the one against the United States that defendant Seago is committing. Defendant Seago is still committing additional crimes against plaintiff for the purpose of concealing, completing and  preserving the frauds unchanged from defendant Seago's original schemes to commit theft by fraud against Plaintiff, the United States, and others. The United States will almost certainly be made an additional plaintiff, either sui sponti by the Court or by plaintiff upon the accumulation during discovery of additional documentary evidence, (i.e: defendant Seago's income tax returns) on plaintiff's or the US Attorney's motion of joinder to add the United States as an additional plaintiff, where FRCiv P Rule 20 recognizes the United States's right to relief in respect of or arising out of the same transactions that injured and continue to add injury to Plaintiff, the United States and others.

## REMEDIES PETITIONED FOR

### Plaintiff's Relief

22.    Plaintiff petitions the court to order the defendants to pay damages to plaintiff in the amount of the original damages caused by the defendants' theft by fraud schemes, plus costs and attorneys fees, all trebled multiple times already by subsequent crimes the defendants wantonly committed against plaintiff and are likely to become mandatorily trebled additional times before litigation is completed.  The defendants already are liable to plaintiff for an amount which exceeds $1,000,000, conclusively proven by irrefutable documentary evidence and in total sum made certain by simple serial multiplication. The amount of RICO compensation due to plaintiff because of his theft damages, a relatively small amount, was made into a very large amount by a two year long series of wanton violations of RICO against plaintiff, even after notice was given, which resulted in damages being compounded at a threefold exponential rate (power of 3) to a very large amount made certain by computation.

### Relief for The United States and Others

23.    The United States is hereby given notice that plaintiff specifically is not undertaking to defend the interests of the United States or any other party. The United States has power and duty to defend its own interests, 18 USC § 1964 (b):

> The Attorney General may initiate proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper,

and the Court is mandated by § 1964 (a) to be concerned with the interests of other direct victims of the defendants' crimes. Plaintiff's RICO role, as intended by the statute, involved more than a year long investigation to ferret out, articulate disclose and  prove with documentary evidence

10

that the defendants were conducting criminal artifices against the United States and others, and by this civil action gave notice to the United States.

24.     Plaintiff offers full cooperation, gratis, to the United States during the course of plaintiff's own litigation, particularly now while plaintiff is completely focused on the facts and the unfolding of the case. Therefore, plaintiff petitions the court forthwith to order Government investigative and prosecutorial attention. For the benefit of Government and others, plaintiff petitions the court to impose on defendant Seago a requirement to create books and records and other appropriate documentation of his commercial affairs, and to order other restrictions on the defendants which work to prevent the continuation of their RICO violation and to prevent the consummation of their frauds against the United States and others, and finally, by appropriate means to ensure that Plaintiff is compensated for his RICO damages, and that crimes the defendants have committed against the United States and others are appropriately redressed.

### Necessity For the Relief of Injured Parties

25.     Plaintiff petitions the court to order defendants to immediately engage certified public accountants to write up the business transactions defendant Seago conducted out of his personal financial accounts, to write up the accounts of each separate enterprise[2] that he controls, separately for himself and each enterprise, all such transactions to be recorded in double entry bookkeeping which produces generally accepted accounting principles financial statements; and

---

[2] Defendant Seago, while simultaneously developing and paying the costs of development of low income housing projects in Mississippi and in Louisiana engaged plaintiff and the Baton Rouge CPA firm to do work on the Mississippi project, *but he never even mentioned that he was building two project at the same time.* Accountants and auditors standard procedures require additional verification to ensure that expenditures and revenues are charged to the proper project when two projects develop simultaneously. By deliberate fraudulent silence defendant Seago prevented this additional verification from happening. Omission to inform is logically senseless except that it enhanced larger frauds that the defendant was committing or intended to commit, including the tax fraud against the United States.

thereafter to engage other CPA firms to audit the financial statements and tax returns and to express their opinion thereon.

26.    Plaintiff shows the Court that the provisions of 18 USC § 1964:

> (c) Any person injured in his business or property by reason of a violation of Section 1962 of this Chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

> (a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of Section 1962 by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in ....

are structured so that "private attorneys general" (RICO civil complainants) are induced by treble damages compensation at paragraph (c) to ferret out crimes of a commercial nature and to bring them to Government attention, including prosecutorial attention; and at paragraph (a) the district courts have jurisdiction, and inherently the duty, to 'prevent and restrain' RICO violations. The court may choose, for example, to direct the US Attorney or the IRS or HUD, or all of them, to take immediate interest in this case, because the United States has a large financial stake and important other interests in the tax fraud that defendants have either consummated or are attempting; and HUD routinely bars from HUD participation those whose business conduct and practices do not meet HUD standards. The United States most likely will prefer to resolve it's issues with the defendants by civil process, rather than criminal, because the penalties imposed on defendants are less harsh and can be crafted more appropriately, and because the standard of proof 'more likely than not' is less difficult for Government to prove than 'beyond reasonable doubt.' The Court may, as well, order the defendants to compensate all (on

12

information and belief, at least these: Little and Company, Dyess and Associates, Resnick Group and Borel and Associates (at least $30,000)) accounting firms who were victims of defendant Seago's *modus operandi* by which he routinely committed theft of professional services by fraud as part of his larger frauds and the concealment of them. To do so potentially holds down additional litigation, and serves justice and RICO's intentions. RICO, at 18 USC § 1962 (a), on the face of it gives the court apparently unlimited *sui sponte* power to "issue appropriate orders" in order to "prevent and restrain violations" This potentially could become a seminal case on point. Upon the accumulation of the pertinent documentary evidence through discovery, Plaintiff or the Court may by joinder make all these accounting firms, and other accounting firms who prepared Defendant Seago's fraudulent income tax returns, either defendants or plaintiffs. Whether or not the contractor, architect and their insurers, who plaintiff believes are victims of Defendant Seago's frauds and malicious prosecutions are made parties to this complaint is of no interest to Plaintiff and of no effect on plaintiff's claims, and will not be subject to Plaintiff's motions for joinder–and who may will not be informed by Plaintiff's discovery activity.

27.    The court in the interest of justice must order the defendants to record their books and records as they should have done in the first place. To have such records (as are required by (tax) law) tremendously reduces the costs and difficulty the United States and other victims will incur, for example, in determining whether and to what extent these defendants have committed tax fraud, or fraud in connection with the Cost Certification submitted to Mississippi Housing Corporation ( HUD) as a precondition to the issuance of more than five million dollars of tax credits, and frauds against their contractor, architect and others. To order the defendants' books to be written up and audited by accountants employed by the defendants aids victims other than

13

just plaintiff and the United States–victims who are likely to be alerted during discovery, by

enabling them with far less difficulty to assert claims and to calculate damages.

## BENCH TRIAL IS LIKELY TO BE FAR MORE EFFICIENT

28.    Trial by jury is not requested. The fact that Plaintiff has been injured by the defendants

by a series of predicate acts in a pattern of racketeering activity is rendered beyond genuine

dispute of a material issue by documentary evidence (Complaint Exhibits A, B, C, D, E, F) that

prima facie establish the defendants' injurious conduct.  Plaintiff's damages compensation

claims are contentious only on the  legal question of how many times the treble damage

multiplier is appropriately applied.  There can be no material factual issue in genuine dispute

regarding plaintiff's original injuries by theft of professional services by fraud by at least five

different predicate acts in a pattern of racketeering activity committed against plaintiff by

defendant Michael Seago. Nor can there be any dispute that defendant Seago repeatedly

committed wire, mail and e-mail frauds against plaintiff  to avoid payment to plaintiff the

defacto accrued RICO damages and additional costs that accrued in the course of his continued

illegal conduct. The only material issue that can be in genuine dispute[3] is the question of how

many times was the application of RICO's threefold damage mandate made applicable as a

matter of law by the defendants' wanton continuation of RICO violating  conduct. Plaintiff

expects to make potential dispute of that issue irrelevant, if necessary, by claiming herein a

fewer number of trebling applications than can be shown to be warranted by the discrete frauds

committed. The  factual issues simply cannot be legitimately disputed. All of the material  facts

are conclusively established beyond plaintiff's burden of proving *more likely than not* by the

---

[3] Only the count of the trebling applications can be disputed. *To treble* for RICO violations is a
nondiscretionary mandate of law which cannot be disputed.

irrefutable documentary evidence (Complaint Exhibits A, B, C, D, E, F) filed with the complaint. Defendants' answers to the complaint, their responses to interrogatories and requests for admissions, and other additional irrefutable documentary evidence that Plaintiff can produce would serve only to add redundant evidence, waste judicial resources, and to perpetuate and extend a pattern of racketeering the defendants are already proven by Complaint appended evidence to be conducting.

29.    The factual basis of plaintiff's cause of action is that on two of six occasions the defendants hired plaintiff to work for them, they fraudulently avoided payment for the services provided. After refusing to pay for the services provided, they committed numerous frauds to avoid paying for the services and to avoid paying RICO damages noticed and billed to them. The facts are shown by documentary evidence to be true and there is practically an absolute absence of contradictory evidence. The payments were not made. No legitimate responses were made. There remains, essentially, only a need for a judicial determination of how many times damages trebled over the two years.  Because this case extraordinarily invokes the legal issue of how many times RICO's treble damage mandate is applied, and since there will be no material factual issues in genuine dispute if the defendants answer truthfully, it's likely that plaintiff's involvement in the case will be resolved by judgment on the pleadings, summary judgement, or directed verdict without need of a trial should defendants demand jury trial in their Complaint Answer.

30.    Plaintiff, at age 72,  prefers to collect the  RICO damages owed to him and to be done with litigation, leaving the remaining issues appropriately to be resolved at the United States's independent incentive and discretion. The US Attorney General has the power pursuant to 18 USC  § 1964 (b), and/or by Joinder,  to convert the remainder of the case to the United States's

15

own civil action, or even into a criminal prosecution–none of which is plaintiff's affair. The United States can and should be made a plaintiff in this civil action by operation of the FRCP Rules applicable to mandatory joinder. The Rules equally apply to others who've been damaged by the defendants' RICO violations shown in this complaint.

## SERIAL APPLICATION OF RICO THREEFOLD PENALTY MANDATE PUNISHES THE CONTINUATION OF CRIMINAL CONDUCT

31.     RICO's threefold penalty mandate requires an additional assessment of the penalty each and every time a discrete predicate act is committed to avoid the penalty or payment of original damages, or for the purpose of continuing or furthering injury or inflicting additional injury. However, strict application of the law in this case, while strict adherence is mandatory by law, would amount only to a futile exercise because the product of RICO treble compounding becomes an amount too large to be collectable. The defendants committed such a large number of predicate acts that to apply an exponential progression at the third power for every one of them exceeds all practical relevance. Plaintiff may stipulate for purposes of damage assessment and/or settlement of his case that trebling only need be applied when a predicate act,  lack of action, or series of predicate acts reflect a change in overt actors, character or purpose of the action or lack of action. Plaintiff reserves the right to say whether the criteria has been met.

## THE PURPOSE OF RICO

32.     This case reflects exactly Congress's intentions when the RICO statutes were crafted, particularly 18 USC § 1964(c),  and enacted into law– that private citizens are induced to act as private attorneys general to prevent crimes, and that victims of crimes committed in interstate commerce are redressed by damages paid by the crime committing defendants that they privately prosecute.

MECHANISM TO FORCE RESOLUTION OF THIS CASE
JUDGMENT ON THE PLEADINGS
RICO DAMAGES PROVEN MORE LIKELY THAN NOT

33.    Plaintiff prays for the forthwith JUDGMENT ON THE PLEADINGS against defendants

Michael Seago, Camille Village, LLC, and North Street 1, LLC, as to liability based on the

Complaint's allegations *that are material to Plaintiff's injuries and damages threefold*

*compensation* and on  evidence appended hereto which shows beyond controversy that these

defendants injured plaintiff by committing a series of RICO predicate acts of mail fraud and

other violations of law. A Judgement on the Pleadings (that the defendants violated RICO

against plaintiff in a pattern of racketeering activity) becomes *res judicata* and establishes that

all other predicate acts are part of a pattern of racketeering activity, which invokes RICO's

mandated treble damages and attorney fees to be paid by defendants. The appended evidence

which proves RICO treble damages liability at least to a more likely than not degree includes

Exhibits:

A.    Plaintiff's October 19, 2010 Affidavit (Complaint Exhibit A) reciting specific
details of the first and second thefts of professional services from plaintiff by fraud
(Complaint Exhibits B, C) and three fraudulent communications ostensibly extorting
records which include two  fraudulent threats of civil malicious prosecution against
plaintiff (Complaint Exhibits D, E, F.)

B.    Plaintiff's first billing for professional services, fraudulently limited to $2,000
(Complaint Exhibit B) which resulted in theft of professional services by fraud in the
amount of $4,000, which was made to accrue treble damages multiple times by
subsequent RICO predicate acts the defendants committed against plaintiff.

C.    Plaintiff's sixth billing for professional services in the amount of $3,750
(Complaint Exhibit C) which was never paid. It and its accompanying fraudulently
contrived $3,734,359 Loss Report (part of Exhibit C) resulted in theft of professional
services by fraud in the amount of $3,750, which was made to accrue treble damages
multiple times by subsequent RICO predicate acts the defendants committed against
plaintiff.

17

D.      Defendant Seago's barely legible 1-15-10 letter to plaintiff (Complaint Exhibit (D) communicating his fraudulent pretext for not paying Plaintiff's $3,750 invoice for professional services, which plaintiff interpreted  to say:

"Dear  Mr. Collins,

I am in disagreement with your last bill. I have paid you to date

|  | Bill | Gas |  |
|---|---|---|---|
| 4-28-09 | $ 800 | $ 75 | $ 875 |
| 6-12-09 | $ 400 | $ 40 | $ 440 |
| 7-02-09 | $ 250 | $ 40 | $ 290 |
| 6-24-09 | $ 300 | $ 25 | $ 325 |
|  | $ 1,750 |  |  |

What I don't understand is that you have taken this next round of review under your own guidance. Ninety percent of what you have created has already been done and paid for by my Accountant on this project. In addition to that I was blind sided by the amount of your last bill $3,750. The average of your last 4 bills is $437.00. I would be willing to give you $500 for all services provided which will conclude our business PAID-IN-FULL. I will do this upon the return of all my documents in your possession.

Sincerely Michael Seago"[4]

E.      Defendant Seago's 2-12-10 e-mail to Plaintiff (Complaint Exhibit E) which is also fraudulent in both content and intent. Plaintiff had already submitted to defendant Seago the Loss Report, along with the $3,750 bill for it and other work done by plaintiff. Plaintiff had no "information" "needed for [Seago's] business." The e-mail is defendant Seago's memorialization of a false contention that his records were 'held hostage' in the possession of others and thus unavailable for examination by his New York Income Tax Accountants and IRS auditors.

---

[4] Defendant Seago's 1-15-10 letter is fraudulent in both intent and in factual detail. In detail, first. Mr Seago did not include plaintiff's first bill ($2,000, which but for Mr. Seago's first fraud would have been $6,000) in his "average" calculation. Next, as shown in plaintiff's Affidavit, the only conclusion that makes sense is that plaintiff did no work that hadn't been specifically directed by Mr. Seago to be done. Next, there was no "project accountant." No other accountant ever produced the analysis and other work for which Mr. Seago was billed the $3,750. The last two sentences are simply a fraudulent contention and an injury inflicting unwarranted termination of plaintiff's services at a point where his work product constitutes a fraudulent document artfully contrived by defendant Seago for income tax evasion and other frauds. The defendant is attempting to extort a fraudulent 'PAID-IN FULL' release; and also attempts to extort _plaintiff's records_ that are the work papers evidence of the work plaintiff  performed for and billed to defendant Seago. Workpapers are always the accountant's, not the client's, property.

18

The e-mail says:

>"Dear Mr. Collins, I have made my offer to you on work that I requested. Please don't hold my information that I gave to you hostage. I need this for my business, sincerely Mike"

F.       Defendant Seago's 4-15-10 letter (Complaint Exhibit F) had Plaintiff's initial (fee limited) bill attached and was pen-highlighted "$2,000" by defendant Seago. This letter, following defendant Seago's utterly contradictory 1-15-10 letter reciting the other amounts paid plaintiff (to date) is also *prima facie* fraudulent in content and purpose. It reads:

>4-15-10 Dear Mr. Collins, You have been paid $2,040 to date including your mileage and gas charges. I specifically sat down with you and agreed that all charges for services provided were not to exceed $2,000. If you pursue with your letters and phone calls I will take my previous offer of $500 off the table. Sincerely M Seago    1)enclosed is the agreement[5] prepared by you.  2) If you fail to deliver my North Street documents within 1 week I will be forced to bring you to small claims court in Mississippi[6].

Plaintiff prays for forthwith JUDGMENT ON THE PLEADINGS that plaintiff's RICO injuries are established by documentary evidence appended hereto (Exhibits A, B, C,) and damages were trebled serially by the discrete predicate acts shown in the Complaint. The first documented amount of direct injury damage by theft of professional services by fraud was $4,000, as shown by the exhibits, which was compounded by the following predicate acts, which did not treble-compound the second injury from theft of professional services by fraud. The first three following recited acts (G, H, I) caused the $4,000 injury damages to be trebled to $12,000 by the second predicate act, to $36,000 by the third predicate act, and to $108,000 by the fourth

---

[5] Defendant Seago enclosed plaintiff's (first) (fee limited) <u>invoice</u>, which certainly cannot be construed as a "agreement prepared by (plaintiff), nor could it possibly ever be construed to mean that plaintiff would work forever, or for the 5 additional jobs he performed and billed Seago, for $2,000. Defendant Seago's contention is implausible on the face of it, and shown by his own hand in the previous letter to be knowingly fraudulent.

[6] Defendant Seago knows that Plaintiff has no North Street documents. On the face of it this is a fraudulent extortion, but Seago isn't trying to extort anything, He is fraudulently creating a paper trail that will hide his concealment from his New York Income Tax Return preparers, the IRS and others who will question his "Loss" on the development of Camille Village Apartments. Mr. Seago's last comment is prima facie an attempted extortion by threat of malicious civil prosecution. Those who commit frauds also know how to conceal them. Concealment is always necessary to the success of the fraud.

predicate act. Then a second theft of professional services by mail fraud (Exhibit C) marked

additional  damages and increased the amounts to be trebled by subsequent RICO violating

predicate acts.

G.      Employment of plaintiff under fraudulent pretenses when Plaintiff was engaged
ostensibly to do legitimate accounting write-up, analytical and consultation work when in
fact the defendants were already fraudulently acting and scheming to produce a fictitious
loss appearance and report for theft by fraud of income taxes purposes and other frauds,
and needed a misleading report to be produced  from which a fraudulent loss could be
claimed. This fraud included the defendants' production of a fraudulent (for lack of
pertinent information and fraudulent mislabeling) a bank's Line of Credit Report critical
to the fraud.

H.      Defrauding CPA Borel into soliciting Plaintiff to do a significant amount of work
for Defendant Seago which Defendant Seago knew would cost more than $3,500 which
he knew would be part of Borel's inducement to employ Plaintiff, which Defendant
Seago planned to limit to $2,000 after a significant part of the work was already done.

I.      Springing the theft of professional services by fraudulent artifice on Plaintiff  to
do $6,000 of work for $2,000 after fraudulently inducing Plaintiff to do a significant
amount of work before the fraud was revealed, causing the employment to be fraudulent
for use of deceit and duress in the inducement of it.

The second theft of professional services by which defendant Seago injured plaintiff in his

business and profession was in the amount of $3,750. Both the $108,000 and this $3,750

(rounded down to $111,000 to make computation easier), trebled to $333,000, then to $999,000

(rounded up to $1,000,000 to make computation easier) then to $3MM, then $9MM, then

$27MM, then $81MM, and then several more times. All of the predicate acts committed after the

second theft by fraud were wantonly committed by Defendant Seago after he had been placed on

written notice by plaintiff that his multiple acts violated RICO and thus mandatorily increased

his damages liability at the exponential power of three: 3, 9, 27, 81, 243, 729, 2,187, 6,561 ....

J.      Defrauding Plaintiff by telephone to perform additional services after the first
theft of professional services, by false promises  to pay without dispute for additional
work if Plaintiff would accept employment for additional work.

K.      Defrauded Plaintiff by employment on sixth occasion ostensibly to help calculate the loss on development of Camille Village Apartments and to perform other necessary tasks by which Defendant Seago collected more than a million dollars, with intention to terminate plaintiff's employment after obtaining a fraud induced overstatement of loss report.

L.      Theft by fraud $3,750 of professional services from plaintiff when billed simultaneously with Plaintiff's mail delivery of the (uncompleted analysis) Loss Report.

M.      Implication of Summit Apartment Management Company by wire fraud not to pay Plaintiff's $3,750 billing from Camille Village Apartment's operating funds and not to "get involved" in the payment of Plaintiff's invoice–essentially instructing Summit to fraudulently remain silent regarding the payment of the invoice.

N.      Stonewalling Plaintiff's re-billed original $3,750 invoice which Plaintiff amended to say "Amount to be determined by Client" with notation that Seago could pay whatever amount he thought appropriate in settlement of the $3,750 billing as long as the payment was promptly forthcoming. Usint the telephone to defraud, Seago told Summit, in response to their how much to pay inquiry, to pay nothing and to not "get involved."

O.      Fraudulently stonewalling probably 25 telephone calls left on voice mail (fraud by silence) from plaintiff pleading to be paid.

P.      Fraudulent stonewalling of Plaintiff's Sept. 10, 2010 NOTICE AND DEMAND FOR PAYMENT FOR SERVICES AND FOR DAMAGES.

Q.      Fraudulent telephone communication to Summit Apartment Management Company instructing not to record Plaintiff's September 11, 2010,  billing to North Street 1, LLC , d/b/a Camille Village Apartments for fees AND RICO DAMAGES.

R.      Fraudulent use of mail to Plaintiff, Complaint Exhibit D, in response to Plaintiff's demand for payment of fees and RICO damages.

S.      Fraudulent use of e-mail to Plaintiff, Compliant Exhibit E, in response to Plaintiff's demand for payment of fees and RICO damages.

T       Fraudulent use of mail to Plaintiff, Complaint Exhibit F, in response to Plaintiff's demand for payment of fees and RICO damages.

U.      Fraudulent stonewall of dozens of additional demands for payment of fees and RICO damages.

V.      Conspiring with others to fraudulently conceal and withhold information demanded by Plaintiff, for the purpose of obstructing justice to conceal Defendant Seago's $1,000,000 tax fraud, and obstructing due process of law.

34.      These defendants wantonly defy the law in a pattern of racketeering activity in order to avoid paying Plaintiff sums they owe to him, and to obstruct justice on the tax fraud and to obstruct due process of law on Plaintiff's claims by conspiring together to deny to Plaintiff information as to the details of the frauds and each co-conspirators' role in the enactment of them. They have no intention of complying with or submitting to the law. They believe themselves to be above the law and they conduct their affairs in utter contempt of it.

DUE PROCESS OF LAW DELAY IN THIS CASE WILL CAUSE MORE CRIMES

35.      Unusual and extraordinary conditions exist in this case where the defendants are wantonly committing new frauds to conceal and perpetuate their much larger frauds against plaintiff, the United States, and others. Stonewalling and other tactics to delay or prevent resolution is a constant criminal tactic used by these defendants. To delay judicial intervention to prevent and restrain the defendants' ongoing criminal conduct  perpetuates the larger frauds they are committing against the United States and others, and adds more injury on Plaintiff and others. Having shown that the defendants' modus operandi is to criminally stonewall, and having been stonewalled for more than a year already, plaintiff prays for speedy due process of law on his Complaint, not obstructed  by fraudulent contrivances by which the defendants continue and reap the rewards of their pattern of wanton racketeering, and wantonly compound the damages caused by their criminal tactics. Delay in attention to and resolution of this Complaint is almost certain to cause multi-million dollars of frauds against the United States and others to either be consummated, or if already consummated, to remain concealed and unredressed.

36.    This Complaint informs the United States and other injured parties, and is strategically crafted to force resolution of all of the affected parties' interests in a RICO satisfactory way.

37.    Plaintiff prays for forthwith Judgment on the Pleadings that these Defendants caused financial injury to Plaintiff by committing multiple predicate acts of theft of professional services and damages by mail, wire and e-mail fraud in a pattern of racketeering activity prohibited by 18 USC § 1961 et seq (RICO) and the defendants are liable to Plaintiff for treble damages for financial injuries caused by their predicate acts, plus costs and reasonable attorney fees. Plaintiff prays for the issuance of a Court Order of Judgment on the Pleadings as follows:

IN THE MATTER OF COLLINS V SEAGO, ET AL
JUDGEMENT ON THE PLEADINGS
THE COURT having examined Plaintiff's Complaint and the documentary evidence appended thereto and having examined the Defendants' Answers and finding no material issue in genuine dispute that Defendants Seago, North Street 1, LLC and Camille Village, LLC damaged Plaintiff Collins in his business and profession by a series of RICO  (18 USC  § 1961 et seq.) prohibited predicates acts of use of mail, wire and e-mail to commit theft of professional services and RICO damages compensation, by fraud, and are liable to Plaintiff for the damages caused.  The COURT orders the parties to confer for the purpose of agreeing on an appropriate settlement on the amount of damages, or otherwise forthwith to present evidence upon which the COURT can make the determination.

38.    Plaintiff has notified other potential defendants that the ramifications of conspiracy law is applicable to them, and expects to reach reasonable settlements with those who were less active and less the recipients of the fruits of the frauds than Defendant Seago. The interests of others, including the United States, can be resolved through their own continuation of this lawsuit, in accordance with RICO's intentions and mandates. Plaintiff, who suffers the same cardiovascular disease that killed his father at age 73, became 72 years old on December 1, 2010, and for this reason needs to see his part of the case resolved, whereupon the interests of the United States and

23

others can be resolved through their own pursuits of justice through the legal mechanisms,

particularly FRCP Rules 18, 19 and 20, that are applicable to this lawsuit.

DEFENDANTS' ONGOING CRIMINAL CONDUCT

39.     These Defendants have made conscious, deliberate decisions to commit additional crimes

for the purpose of preserving the fruits of the crimes they've already committed, and to avoid

being held accountable for the crimes they've already committed. Defendant Seago in particular

has benefitted or will reap the benefit of several million dollars of unjust enrichment from the

crimes he has committed against his contractor, architect and their insurers, and professional

service providers he injured, and from his investment partner ($3,734,359) and about $1,000,000

or more unjust enrichment by tax frauds committed against the United States and Louisiana.

Defendant Seago still fraudulently acts and conspires with others with whom he is associated,

who have been given notice in detail of the crimes they are conspiring to commit, to commit

additional frauds in order to obstruct justice and due process of law and to conceal the evidence

of Defendant Seago's and their own roles in these crimes. They still wantonly conspire and

contrive by crime to conceal their own roles in the crimes complained of herein. All of the

defendants and others are still conspiring and overtly acting to commit additional crimes,

including obstruction of justice and obstruction of due process of law, in order to conceal,

preserve and enhance their prior criminal activity. They all are knowingly enlisting others with

whom they are associated to engage in wanton criminal activity in an unlawful effort to avoid

being held accountable for the crimes the defendants and their co-conspirators have committed

and *continue to commit.*

24

40.    The district courts of the United States are mandated by 18 USC § 1964 (a) to *"prevent and restrain"* the exact criminal conduct these defendants wantonly, on notice, continue to practice. These defendants not only injure plaintiff by their continuing to commit crimes, they are, by tax fraud, deliberately injuring The United States of America by theft of about a million dollars of income taxes

> (a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of Section 1962 by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in ....

41.    That the defendants intend to or have already defrauded the United States out of about $1,000,000 of income taxes due from Michael Seago, and that they have already consummated numerous frauds in a pattern of racketeering activity by which Michael Seago intends to or has misappropriated by fraud a $3,734,359 residual interest in the Camille Village Apartments, is shown as a consequence of RICO's intended function–for private citizens to bring to Federal Government attention to enable the Government to prevent and restrain crimes being committed in interstate commerce. To deal with these facts falls completely to the United States. Whether these facts are proven, prevented and restrained is immaterial to Plaintiff's injury which these defendants are still inflicting on Plaintiff by their ongoing violations of RICO's prohibitions.

42.    Defendant Seago has been shown to defraud without discrimination the professional services providers he employs. In the present circumstances where he is shown to be committing a significant crime against the United States and where severe criminal penalties are possible, and where he faces significant private civil liability, not only is there no reason to believe that he will be straightforward with the counsel he employs to respond to this and other potential

25

litigation, the contrary is more likely. Lawyers who act negligently, recklessly or dishonestly in Mr. Seago's defense risk becoming co-defendant conspirators along with him. This complaint was written in extraordinary detail, and includes this paragraph, to give warning and notice to those who may be approached by Defendant Seago for representation in these matters.

43.    These defendants injured plaintiff in his business and profession by theft by mail fraud of professional services on two occasions (Complaint Exhibits A, B, C) which by themselves constitute a RICO violation and establish that Plaintiff was injured by them, and by repeated mail frauds thereafter they continued and still continue to injure Plaintiff by theft of accrued RICO damages he has been and is attempting by mail to collect from them. By the defendants' wanton–they continue to commit crimes even after notice that their conduct is criminal-- continuation of the same predicate acts these defendants presently are inflicting additional injury on Plaintiff, in violation of RICO law.

JOINDER AND RICO

44.    Plaintiff prays for forthwith relief in accordance with RICO law and the FRCP Joinder mandates, which Plaintiff shows are especially appropriate and applicable in RICO cases such as this, where a civil plaintiff brings to the attention of the United States that crimes against the United States and other citizens are being committed, and then essentially the Plaintiff is paid for his efforts by the defendants whose crimes he has exposed, and the further development of the case morphs to the discretion of the US Attorney and the other parties affected by the crimes, and their lawyers. Pursuant to Rule 20 (b) the interests of the original Plaintiff (RICO "private attorney general") are quickly resolved where the law mandates the Court to resolve separate interests by separate trial and/or judgement to "prevent delay or prejudice" to [the complainant]

–just as is being pleaded in this Complaint. Plaintiff has moved for forthwith judgment on the pleadings.

*Res judicata* CURTAILS EXCESS LITIGATION IN RICO CASES

45.    Any Judgement (Summary, Declaratory, on the Pleadings) affirming Complaint Paragraph 1, establishes RICO violations for all purposes in favor of all plaintiffs and it works against all defendants who've committed any conspiratorial overt criminal act in defense of or in support of either the defendants' criminal acts or their own, whereupon the treble damages penalty is invoked and the risk of a three times greater penalty is imposed on the actor. The question of whether violation of RICO is established is no longer judicable. When combined with the legal principle that every conspirator to a crime is fully liable for every consequence of all parts of the crime, the incentive to settle is more than three times as great as is applicable in non-RICO cases. The effect is not accidental, it reflects Congress's intentions to prevent and restrain commercial crimes, by providing the mechanism by which victims of commercial crimes can recover retribution and receive compensation (treble damages) for their recovery efforts. Judgement that the Paragraph 1 claims are established that:

> ...the defendants on numerous occasions did use United States mail and interstate wire and internet communications facilities to commit theft of services by fraud from plaintiff, and then by the same means by fraud did commit theft of services and RICO (18 USC § 1962 et seq.) damages compensation. The defendants' thefts by fraud against plaintiff constitute a RICO prohibited "pattern of racketeering activity" which caused several injuries to plaintiff [and caused] RICO's mandatory threefold damages compensation for each of the injuries,

limits the only matters remaining for litigation, in most instances, to whether a particular defendant overtly committed at least one predicate act (by statute, a crime) and whether another party was injured. The threat of being held liable for all consequences of everybody's criminal

activity works to induce prompt and diligent efforts to settle without further litigation. In sum, RICO, intended by Congress to promote fair dealing in commerce or financial penalty for the alternative, takes the financial leverage and litigation strategic advantages away from RICO violators and gives them to their victims. Because the legal processes employed in this complaint should be of significant public interest and should become an important precedent in similar situations[7] plaintiff is already soliciting news media attention to it. RICO is a Federal law that takes the advantages away from criminals operating in commercial situations and gives them, at the exponential power of 3, to their victims. Plaintiff was, *and is still being*, intentionally injured in his business and profession by overt wanton criminal acts committed by the defendants in a RICO prohibited pattern of racketeering activity. There are no material issues in genuine dispute that by their unlawful conduct these defendants caused Plaintiff's injuries. As a matter of law Plaintiff is entitled to recover mandatory treble damages and attorney's fees from these defendants. Wherefore PLAINTIFF PRAYS FOR JUDGEMENT ON THE PLEADINGS that the defendants violated RICO and damaged plaintiff in his business and profession and owe him treble damages.

Respectfully submitted,

*Francis A. Collins*, Plaintiff
18283 Brickyard Road
Port Vincent, LA 70726
Phone 225-223-5891

---

[7] It was his reading of a September 2010 newspaper article about an Ascension Parish contractor pleading guilty to theft by mail fraud of services from sub-contractors that alerted Plaintiff to the clearest basis of this lawsuit. The article stated that the subs would still need to pursue civil litigation in order to collect their money. Had a single RICO civil action been filed instead, and joinder rules applied, neither the criminal conviction nor the additional lawsuits would have been necessary. Civil RICO litigation avoids such imprudence and is far more effective.